IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH ALAN MUJICA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-0310 |
| | § | |
| RICK THALER,[1] TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Before the Court[2] in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's

Answer (Document No. 11) to Petitioner's Federal Application for Writ of Habeas Corpus

(Document No. 1). Having considered the claims raised by Petitioner in his § 2254 Application and

his Memorandum of Law in Support (Document Nos. 1 & 2), Respondent's Answer (Document No.

11), in which Respondent maintains that no relief is available to Mujica on any of his claims,

Mujica's additional briefing (Document No. 16), the state court records, and the applicable law, the

Court ORDERS, for the reasons set forth below, that Petitioner's Federal Application for Writ of

Habeas Corpus (Document No. 1) is DENIED, and that this case is DISMISSED WITH

PREJUDICE.

---

[1] Rick Thaler, the new Director of the Texas Department of Criminal Justice, Correctional
Institutions Division, is substituted as Respondent. *See* FED. R. CIV. P. 25(d).

[2] On July 7, 2008, pursuant to the parties' consent, this case was transferred by the District
Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 13.

I.    **Introduction and Procedural History**

Keith Alan Mujica ("Mujica") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of a 2005 felony conviction in the 9th District Court of Montgomery County, Texas, for possession of a controlled substance, Cause No. 04-07-05244-CR.  Mujica was charged by Indictment with that offense on July 6, 2004.  On January 20, 2005, a jury found Mujica guilty, and thereafter, upon finding two prior convictions alleged for enhancement purposes to be true, sentenced Mujica to seventy-five years imprisonment.  Mujica's conviction was affirmed on appeal on April 12, 2006, after his appellate counsel filed an *Anders* brief.  *Mujica v. State*, No. 09-05-043-CR (Tex. App–Beaumont 2006).  Mujica's subsequent petition for discretionary review was refused on August 30, 2006.

On June 6, 2007, Mujica filed a state application for writ of habeas corpus.  That application was denied by the Texas Court of Criminal Appeals on November 13, 2007, on the findings of the state trial court without a hearing.  *Ex parte Mujica*, Application No. WR,68-547-01.  This § 2254 proceeding, filed by Mujica on or about December 15, 2007, followed.   Respondent has filed an Answer (Document No. 11), to which Mujica has filed a Reply in opposition (Document No. 16).  This § 2254 proceeding is ripe for ruling.

II.    **Factual Background**

The Texas Court of Appeals, in its written opinion affirming Mujica's conviction, set forth the factual background as follows:

> As testified to by the State's witnesses, the facts were fairly simple.  The police received a telephone call informing them that Mujica would be at a particular address in the city of Willis at a certain time to retrieve some methamphetamine that Mujica had left there on a prior occasion.  Prior to the day of the phone call, Mujica was

suspected by agents of the United States Drug Enforcement Administration of being involved in drug trafficking.  Law enforcement personnel set up surveillance on the particular address and observed Mujica arrive, enter the house, stay for a short time, and exit the house.  The authorities were aware of two outstanding arrest warrants for Mujica involving prior traffic offenses.  In the attempt to stop Mujica's vehicle and execute the arrest warrants, a high-speed chase ensued with Mujica abandoning the methamphetamine by throwing it out of his moving vehicle.  Mujica's vehicle was eventually stopped and he was arrested.  The methamphetamine was recovered from the side of the road where it was abandoned by Mujica with the total weight recovered on the day of the arrest being 7.74 grams.  Mujica's volunteered offer to provide information to the arresting agents in exchange for his release further provided proof of Mujica's criminal culpability for the offense charged.

*Mujica v. State*, No. 09-05-043-CR at 3-4.

### III.    Claims

Mujica sets forth 43 claims in his § 2254 application:

1.    that he was denied his "Sixth Amendment right to confront and cross-examine witnesses";

2.    that his trial counsel was ineffective for "failing to object on Confrontation Clause grounds";

3.    that he was denied the effective assistance of counsel of appeal when counsel filed an *Anders* brief;

4.    that his constitutional rights were violated by the introduction of his post-arrest statements "without [the] benefit of Miranda warning[s]";

5.    that his "14th Amendment rights were violated when the State secured a conviction . . . when there was no evidence to prove such";

6.    that the "[p]rosecutor knowingly elicited false testimony in violation of the 14th Amendment";

7.    that his due process rights were violated "by introducing hearsay extraneous offense";

3

8.      that his due process rights were "violated when the State destroyed evidence to prove [he] was innocent";

9.      that his Fourth Amendment rights were violated when "the State made a pretextual stop";

10.    that the trial court abused its discretion and denied him an impartial jury;

11.    that his appellate counsel was ineffective for not raising on a claim that the trial court improperly admitted the "hearsay testimony of Greg Raider";

12.    that the trial court abused its discretion in allowing the "hearsay testimony of Mr. Greg Raider";

13.    that the prosecutor engaged in misconduct when he adduced the "hearsay testimony from Mr. Mark Terry";

14.    that the prosecutor engaged in misconduct when he presented evidence of an "extraneous offense in the presence of the jury";

15.    that his appellate counsel was ineffective for not raising a claim challenging the admission of extraneous offense evidence;

16.    that the jury was unconstitutionally empaneled;

17.    that his trial counsel was ineffective for failing to object to the trial court's empaneling of the jury;

18.    that his trial counsel was ineffective for failing to ask for a jury shuffle;

19.    that the trial court erred in admitting Mujica's post-arrest statement which was made without having been advised of his *Miranda* warnings;

20.    that his appellate counsel was ineffective for failing to challenge the admission of Mujica's pre-*Miranda* statements;

21.    that his appellate counsel was ineffective for failing to challenge the trial court's decision "allowing the contents of a destroyed video to be admitted as evidence";

22.    that the prosecutor engaged in misconduct by withholding the whereabouts of Denise Flynn, a witness who could have offered exculpatory evidence;

23.    that trial counsel was ineffective for failing to call Denise Flynn as a witness;

24.     that the trial court abused its discretion in allowing the State to "secrete Denise Flynn as a witness";

25.     that the trial court erred in "[a]llowing the jury to separate without instruction";

26.     that the jury engaged in misconduct;

27.     that appellate counsel was ineffective for failing to challenge the absence of an entrapment instruction in the jury charge;

28.     that trial counsel labored under a conflict of interest;

29.     that the trial court abused its discretion in failing to instruct the jury on entrapment;

30.     that trial counsel was ineffective for failing to object to the "jury separating without instruction from [the] trial court";

31.     that the trial court erred in failing to "give *Miranda* instructions to the jury regarding the voluntariness of [Mujica's] alleged statement";

32.     that the trial court abused its discretion in "allowing an [e]xtraneous offense to be admitted at trial";

33.     that trial counsel was ineffective "when advice given regarding enhancement was false";

34.     that counsel was ineffective for failing to object "to the jury entering into the judge's chambers along with the prosecutor [ ] [w]ithout trial counsel being present";

35.     that the prosecutor engaged in misconduct when she "entered into the Judge[']s chambers with the jury panel without [d]efense counsel being present":

36.     that the trial court abused its discretion "for allowing the jury panel in the Judge[']s chambers with the prosecutor and without [d]efense counsel being present";

37.     that the jury process was tainted when the jury panel "had a conversation with the Prosecutor Ms. Tillman out of the presence of the [d]efense counsel";

38.   that his Fifth and Fourteenth Amendment due process rights were violated when the Indictment "did not include any enhancement paragraphs," but the "State was allowed to present prior convictions for enhancement purposes";

39.   that his Fifth and Fourteenth Amendment due process rights were violated when the trial court denied counsel's motion to set aside the indictment;

40.   that appellate counsel was ineffective for failing to challenge the trial court's denial of counsel's motion to set aside the indictment;

41.   that his Fifth and Fourteenth Amendment due process rights were violated by virtue of the trial court's denied counsel's "requested jury instruction on the issue of the voluntariness of [Mujica's] statement";

42.   that appellate counsel was ineffective for failing to challenge the trial court's denial of counsel's "jury instruction on the issue of the voluntariness of [the] statement used against [Mujica] when *Miranda* warnings were not given"; and

43.   that his Fifth and Fourteenth Amendment due process rights were violated when he was convicted with insufficient evidence.[3]

Claims 1 - 42 were raised by Mujica in state application for writ of habeas corpus.  Claim 43 was raised by Mujica in his petition for discretionary review.

Respondent argues in his Answer that no relief is available on claims 1, 2, 3, 5, 6, 8, 9, 13, 14, 21, 22, and 24, because the Court of Criminal Appeals rejected those claims on the basis of a state law procedural bar and Mujica has not made the showing necessary to overcome the procedural bar.  With respect to the remaining claims, Respondent maintains that no relief is available on any of those claims under § 2254(d) because the Texas Court of Criminal Appeals' rejection of those

---

[3] Mujica's claims could reasonably be grouped into the following seven broad categories:(1) ineffective assistance of trial counsel claims; (2) ineffective assistance of appellate counsel claims; (3) claims related to alleged infirmities in the jury instructions; (4) claims regarding the improper admission of Mujica's (a) his post-arrest statement, (b) extraneous offense evidence, and (c) hearsay; (5) claims of jury misconduct; (6) claims of prosecutorial misconduct; and (7) claims related to witness Denise Flynn.  For purposes of completeness and clarity, however, Mujica's claims will be set forth and numbered herein in the same manner presented by Mujica in his § 2254 application.

claims is not contrary to or based on an unreasonable application of clearly established Federal law.

## IV.   Standard of Review

### A.   State Law Procedural Bar

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).  In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

### B.   § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 641, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v.*

8

*Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)).

As for factual issues, the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000); *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative. In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).

9

Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its

reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003);

*Pondexter v. Dretke*, 346 F.3d 142, 148-49 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).


**V.    Discussion – Procedurally Barred Claims**

As set forth above, most of the claims Mujica raises herein were raised by him in his state

application for writ of habeas corpus.  With respect to claims 1, 2, 5, 6, 8, 9, 13, 14, and 22, the

Texas Court of Criminal Appeals rejected those claims on state law procedural grounds upon the

following findings/conclusions:

B.    FINDINGS OF FACTS AND CONCLUSIONS OF LAW REGARDING APPLICANT'S CLAIM THAT HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION WAS VIOLATED [Grounds for Relief 1 and 2]

FINDINGS OF FACT

1.    Applicant fails to plead or prove why he could not raise on direct appeal the record-based claim that Trooper Raider's testimony violated his Sixth Amendment right to confrontation.

2.    The State introduced Trooper Raider's testimony to explain his actions during the pursuit and arrest of Applicant.

CONCLUSIONS OF LAW

1.    Applicant's record-based claims relating to the alleged violations of his Sixth Amendment right to confrontation are not cognizable on application of writ of habeas corpus because Applicant fails to plead or prove why he could not raise the claims on direct appeal.  Ex parte Gardner, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) (op. on reh'g).

2.    Trooper Raider's testimony did not implicate the Sixth Amendment because the complained-of statement was not hearsay.  Thornton v. State, 994 S.W.2d 845, 854 (Tex. App.– Fort Worth 1999, pet. ref'd) (relying on Schaffer v. State, 777 S.W.2d 111, 113-114 (Tex. Crim. App. 1989)).

\* \* \*

D.    FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING APPLICANT'S NO-EVIDENCE AND FOURTH AMENDMENT CLAIMS: [Grounds for Relief 5 and 9]

### FINDINGS OF FACT

1.    The record contains substantial evidence of Applicant's guilt.

2.    Applicant had a fair opportunity to raise his search and seizure claims on direct appeal.

### CONCLUSIONS OF LAW

1.    Because the record contains some evidence of Applicant's guilt, his no evidence claim is not cognizable on application of writ of habeas corpus. Ex parte Perales, 215 S.W.3d 418, 420 (Tex. Crim. App. 2007).

2.    Applicant's search and seizure ground for relief is not cognizable on application for writ of habeas corpus, as he had a fair opportunity to raise the claim on direct appeal. Ex parte Kirby, 492 S.W.2d 579, 581 (Tex. Crim. App. 1973).

E.    FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING APPLICANT'S CLAIMS OF PROSECUTORIAL MISCONDUCT: [Grounds for Relief 6, 8, 13, 14, and 22]

### FINDINGS OF FACT

1.    Applicant bases his claim that the prosecutor knowingly elicited false testimony entirely on citations to the record.

2.    Applicant bases his claim that the prosecutor destroyed evidence entirely on citations to the record.

3.    Applicant bases his claim that the prosecutor improperly adduced hearsay evidence from Agent Terry entirely on citations to the record.

4.    Applicant bases his claim that the prosecutor improperly presented extraneous offense evidence in front of the jury entirely on citations to the record.

5.     Applicant bases his claim that the prosecutor hid the whereabouts of a witness entirely on citations to the record.

6.     The record reflects that Applicant's prosecutorial misconduct claims are without merit.

CONCLUSIONS OF LAW

1.     Applicant's record-based prosecutorial misconduct claims are not cognizable on application of writ of habeas corpus because Applicant fails to plead or prove why he could not raise the claims on direct appeal. Ex parte Gardner, 959 S.W.2d at 199.

*Ex parte Mujica*, Application No. WR-68,547-01 at 487-490.  In addition, with respect to claim 24, the Texas Court of Criminal Appeals rejected that claim on the following:

Applicant fails to plead or prove why he could not raise on direct appeal his record-based claim that the trial court withheld the location of Denise Flynn from Applicant.

* * *

Applicant's record-based claim that he trial court hid the whereabouts of Denise Flynn from Applicant is not cognizable on application of writ of habeas corpus because Applicant fails to plead or prove why he could not raise the claim on direct appeal. Ex parte Gardner, 959 S.W.2d at 199.

*Id.* at 490, 491.  Mujica argues, in an attempt to overcome the state procedural defaults, that his appellate counsel's ineffectiveness is "cause" for his default, and that such ineffectiveness affected both the integrity and outcome of his appeal.  While ineffective assistance of appellate counsel may suffice as cause and prejudice to overcome a state procedural default, *Murray v. Carrier*, 477 U.S. 478, 488-492 (1986), no showing has been made herein that appellate counsel was ineffective.[4]

_____

[4] Even in connection with an assessment of whether appellate counsel's performance can suffice as "cause" to overcome a state procedural default, this Court is bound by the dictates of § 2254(d) and should only review the Texas Court of Criminal Appeals' rejection of the ineffectiveness claim to determine whether the rejection is contrary to or an unreasonable application of clearly established Federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Claims of ineffective assistance of counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Claims of ineffective assistance of appellate counsel are governed by that same two prong test. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Rather, "[a]ppellate counsel is obligated only to raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson*, 141 F.Supp.2d 661, 704-705 (S.D. Tex. 2001). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). As for *Strickland's* prejudice prong, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).

Here, the record shows that Mujica's appellate counsel, Stephen C. Taylor, filed an *Anders* brief. The filing of an *Anders* brief, in and of itself, does not establish either deficiency or prejudice within the meaning of *Strickland*. Moreover, the Texas Court of Criminal Appeals concluded, in connection with Mujica's state application for writ of habeas corpus, that Mujica's ineffective

assistance of appellate counsel claims had no merit. *Ex Parte Mujica*, WR-68,547-01 at 482-496. That determination, as set forth below in more detail, is not contrary to or an unreasonable application of *Strickland*, and is not based on an unreasonable determination of the facts in light of the evidence. Accordingly, Mujica's arguments that appellate counsel's ineffectiveness constitutes cause for his procedural default of claims 1, 2, 5, 6, 8, 9, 13, 14, 22, and 24, fails. In addition, because there is no evidence that Mujica is actually innocent of the offense of which he was convicted, Mujica cannot overcome the state law procedural bar, and claims 1, 2, 5, 6, 8, 9, 13, 14, 22, and 24 are procedurally barred from review in this § 2254 proceeding.[5]

## VI.   Discussion – Claims subject to review under § 2254(d)

The Texas courts, in rejecting Mujica's *pro se* claims on appeal, in denying Mujica's state application for writ of habeas corpus on the findings of the state trial court without a hearing, and in refusing Mujica's petition for discretionary review, rejected the remainder of Mujica's claims on the merits. Although many of Mujica's claims are related or overlap, and could be addressed categorically, because some of the claims were rejected without comment in connection with Mujica's appeal, and the rest were addressed with specificity by the Texas Court of Criminal Appeals in connection with Mujica's state application for writ of habeas corpus, each of the remaining claims, other than the ineffective assistance of counsel claims, will be considered

---

[5] Respondent also argues that claims 3 and 21, two of Mujica's ineffective assistance of appellate counsel claims, are procedurally barred from review based on the Texas Court of Criminal Appeals' determination that appellate counsel could not be ineffective for failing to raise a claim on appeal that had not been preserved by trial counsel for appeal. *See Ex Parte Mujica*, WR-68,547-01 at 492. Because such conclusions by the Texas Court of Criminal Appeals relate to appellate counsel's *performance*, it cannot be said that those ineffective assistance of appellate counsel claims were, themselves, rejected on state law procedural grounds. Therefore, despite Respondent's arguments, claims 3 and 21 are not procedurally barred from review.

separately, and in the order they were presented by Mujica.

    A.    **Claim 4**: **that his constitutional rights were violated by the introduction of his post-arrest statements "without [the] benefit of Miranda warning[s]"**

In claim 4, Mujica contends that his constitutional rights were violated by the admission of the following post-arrest statement: "Hey, if you will let me go, I'll work with you. I know a lot of people. We can do a lot of things." Memorandum in Support (Document No. 2) at 39. According to Mujica, those statements were not admissible because he had not been given his *Miranda* warnings.

As argued by Respondent, and as borne out by the record, Mujica's post-arrest statements were "volunteered," S.F. Vol. IV, at 188-191, and were therefore not inadmissible because they were made without him having been given his *Miranda* warnings. "[T]he Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). "'Custodial interrogation' is 'questioning initiated by law enforcement officers after a person has been taken into custody.'" *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Volunteered or spontaneous statements made by a suspect are not subject to the exclusionary rules set forth in *Miranda*. *See Pennsylvania v. Muniz*, 496 U.S. 582, 603-604 (1990) ("incriminating utterances," which "were not elicited in response to custodial interrogation" were not subject to *Miranda* and were admissible); *United States v. Gonzales*, 121 F.3d 928, 940 (5th Cir. 1997) (statements that were not made in response to questioning initiated by law enforcement, but were spontaneously made by the defendant, are not subject to *Miranda's* exclusionary rules); *United States v. Savell*, 546 F.2d 43, 46 (5th Cir. 1977) ("*Miranda* only requires that a recital of the warnings precede interrogation and does not reach a situation such as this one, where the statements were unsolicited, spontaneous and freely

made prior to any attempted interrogation").

Here, because the evidence in the record is that Mujica's statements were spontaneous and volunteered, and were not made in response to "custodial interrogation," S.F. Vol. IV at 188-191, Mujica's constitutional rights were not violated by the introduction of his post-arrest statements "without [the] benefit of *Miranda* warning[s]."  Accordingly, the Texas courts' rejection of this claim is not contrary to or an unreasonable application of *Miranda* and its progeny, nor is it based on an unreasonable determination of the facts in light of the evidence in this record, and no relief is available on this claim under § 2254(d).

**B.     Claim 7: that his due process rights were violated "by introducing hearsay extraneous offense"**

In claim 7, Mujica complains about the admission at trial of testimony about an extraneous methamphetamine offense involving a "Keith LNU [last name unknown]."  According to Mujica, that testimony, all of which was hearsay, was prejudicial in that the jury assumed he was the "Keith, LNU" referred to, and was by prior extraneous conduct, guilty of the offense at issue in this case.

The record shows that DEA Agent Brad Sowell, in response to questions during the prosecutor's re-direct, explained the DEA's investigation of Mujica, Denise Flynn's participation in that investigation, and the involvement of a unidentified female who was associated with Mujica. In doing so, Agent Sowell mentioned a phone call with a "Keith, LNU" about a "two ounce methamphetamine deal where he . . .".  S.F. Vol. V at 130.  Mujica's counsel, before Agent Sowell could finish his sentence, objected, and asked to approach the bench, where the following discussion took place on the record, but out of the presence of the jury:

> Prosecutor: Judge, I instructed this witness not to go there.  I did not know that this was the answer coming from him.  He was instructed not to go there.  I would just ask that you make the instruction for the jury to disregard and - -

Defendant's Counsel: May we take the jury out so that I can take up some issue with the Court?

The Court: This is involving a person who is not on trial here today.

Prosecutor: I know, but he's the one who brought it up about Denise Flynn.

The Court: No, Keith, LNU.

Prosecutor: Keith, LNU is Keith Mujica.

The Court: Well, I don't know that.

Prosecutor: I'm getting there.

The Court: All right.

(BENCH DISCUSSION ENDS)

The Court: Take the jury out.

(OPEN COURT, DEFENDANT PRESENT, JURY NOT PRESENT)

The Court: All right.  Make your motion.

Defendant's counsel: Your Honor, the State explicitly represented to you not more than 30 minutes ago that she had instructed her witness that no conversations were going to be had through the witness, through this special agent, regarding any prior conduct allegedly to have been transpired between my client and this special agent. We filed a 404(b) motion on September 30th of 2004, requesting notice of any extraneous offenses they intended to elicit in the trial of this cause.  They have never filed any evidence whatsoever of any other alleged extraneous offenses or drug deals or anything between this agent and my client.  Specifically, the only supplemental discovery they filed was on January 10th, 2005 where they list some incident in 1988. And as the Court is well aware and we labored through this since last week when we had our pretrial conference, that she related to you then that these DEA 6s and those tapes that you had ordered them to divulge to me last week were not provided to them until January the 13th.  They were given to me Tuesday morning, January 18th, before the start of trial before we picked this jury.  We had no prior knowledge of any of this information about any purported drug dealings or telephone conversations between Keith Mujica and agents of the DEA.  The State cannot claim that they were contained within her file because they weren't in there at any time during the discovery process.  She didn't have care, custody and control of those.  So, therefore, they can't claim an open file policy regarding any DEA information this man intends

17

to try and bias and prejudice and highly inflame this jury against my client with regard to any extraneous offenses which may have occurred any time between January and March 15th of 2004.  I move for an instruction that the jury disregard that.  I ask that this witness's testimony be excluded.  I move for a mistrial.

Prosecutor: May I respond, Your Honor?

The Court: You may.

Prosecutor: Judge, I'm not the one who stood up here and opened the door for all of this, quote, confidential informant information to come out regarding Denise Flynn. I'm not the one that's trying to come in after the fact and bring in Denise Flynn.  He did.  And, Your Honor, these aren't extraneous offenses for one, because in my opinion, this is setting up the whole background into the investigation of why this agent even knows who Denise Flynn was.  If it weren't for the fact that the defendant is calling him, he wouldn't have then had the telephone information to trace the phone number to then again the name, Denise Flynn, to trace to the post office box, to go to the Post Office, then find out that post office box was correlated to the Gerald Street address.  The defense did that yesterday or this morning.  So, my point is, it's not extraneous.  It's going to be background information that these agents had to be able to get out there to the Gerald Street address.

And, in addition to that, this witness, as well as every DEA agent, every witness I've called so far, has been on the State subpoena list since at least since September.  This counsel, who is very well practiced in the Federal courts as well as state courts and has been practicing for many years, knows very well that he is able to pick up the phone and call any of the state's witnesses that he would like to.  He's also very familiar with the fact that he can call them and ask them for copies of their DEA 6s or he could have called me and said, hey, by the way, are there DEA 6s, which he never did.  The State gave them to him as soon as I had them.

The Court: So, is it a crime for someone to call a DEA agent on the phone and talk about things like a possible drug deal?

Prosecutor: Absolutely not.

The Court: Is it an extraneous offense?

Prosecutor: No.

The Court: But it's a bad act; is that correct?

Prosecutor: Well, why is it a bad act?

The Court: Offering to make a drug deal is a bad act.

Defendant's counsel: It's a felony, Your Honor.

Prosecutor: I don't recall.  Was that the testimony?

The Court: The testimony was that he got his phone and that the agent went on to say when he called me to talk about a possible two-ounce purchase of meth.

Prosecutor:  Judge, and I understand that.  The witness was told, and you can ask him, we talked about the fact we're not going to go into extraneous matters; that he knew that.  Unfortunately - -

The Court: Here's the problem that I see.  I think that the defense has been very successful in being able to put before the jury that there is a lot more about this investigation than just a random phone call and a random stop.

Prosecutor: Yeah, the DEA is involved.

The Court: The DEA is involved and there is surveillance.  But it makes no sense to allow the defense to be able to throw out these allegations and then not allow the State to be able to come back and show to the jury what was the basis or the relationship between the DEA and the defendant and the DEA and the person who made the phone call, and also the relationship with that person.  So, you can't have it both ways.

Now, I'm not going to grant your mistrial; I'm not going to instruct the jury. . .

                                    * * *

Defendant's counsel: Your Honor, I'd like to ask this witness be instructed not to divulge any of these conversations for which I was not made privy to in the 404(b) motion.

The Court: I will instruct this witness just to answer the question that he's asked and not to volunteer information.

S.F. Vol. V, at 130-136.

For a state prisoner to be entitled to relief on a claim that his due process rights were violated by the improper admission of evidence, it must be shown that the evidence was "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825

(1991) (citing *Darden v. Wainwright,* 477 U.S. 168, 179-83 (1986). Extraneous offense evidence may be admitted without violating a defendant's due process rights if a strong showing is made "that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'" *Story v. Collins,* 920 F.2d 1247, 1254 (5th Cir. 1991) (quoting *Enriquez v. Procunier,* 752 F.2d 111, 115 (5th Cir. 1984)). In addition, even if extraneous offense evidence is improperly admitted, habeas relief is not warranted unless the improperly admitted extraneous offense evidence "was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain,* 141 F.3d 207, 214 (5th Cir. 1998); *see also Janecka v. Cockrell,* 301 F.3d 316, 328-29 (5th Cir. 2002) "[a]ssuming arguendo that the admission of [this evidence] was constitutional error, [the] claim still fails [if the petitioner] has not shown that the testimony had a 'substantial and injurious effect or influence in determining the jury's [ ] verdict.') (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).

Here, the testimony about which Mujica complains was brief and cannot be said to have been a crucial or highly significant factor in Mujica's conviction. Moreover, as explained by the trial court, the testimony was related to defense counsel's attempt to discredit the DEA's investigation and identification of Mujica as a drug trafficker. The admission of Sowell's testimony, even if it could be construed as evidence of an *extraneous* offense, did not render Mujica's trial fundamentally unfair. As such, the Texas court's rejection of this claim is not contrary to or an unreasonable application of clearly established Federal law, and no relief is available on this claim under § 2254(d).

20

C.    **Claim 10**: that the trial court abused its discretion and denied him an impartial jury

In claim 10, Mujica complains about the jury selection process and the statements made by the trial judge that led to the empaneling of a jury that was not fair and impartial.  According to Mujica, the trial court instructed members of the jury panel to "sit in the front two rows and not say anything if they wished to be selected to make up the members of the jury."  Memorandum in Support (Document No. 2) at 72.

"The conduct of *voir dire* is left to the broad discretion of the trial judge. The exercise of that discretion, however, is limited by 'the essential demands of fairness.'" *Knox v. Collins*, 928 F.2d 657, 661 (5th Cir. 1991) (quoting *Aldridge v. United States,* 283 U.S. 308, 310 (1931)).

Here, the record shows that the trial court made some brief remarks about the voir dire process that included the following:

> So, the question is, is this opinion of yours held so strongly that you cannot follow the law, that you cannot be fair, cannot be impartial?  And the lawyers have other motives as well.  I mean, if the State finds out that you or some member of your family was falsely accused of a crime, went through the system and you hold some kind of grudge about the way you or they were treated by police officers, they have a right to inquire about that.  And the same for the defense.  If you are a member of law enforcement, or you have a strong opinion about people who are charged with a crime, then they have a right to ask about that, too.  And the reason they ask about that is that because most of you are going to go home today and say, I didn't get picked.  Well, that isn't how it works.  Each side has ten strikes in a criminal case. They have a list of your names.  They will go through the information that you filled out and they will look at your list.  They will look at the questions that you asked and/or how you answered questions.  Then they will strike ten names.  Very rarely do they strike the same persons.  They'll strike ten names.  Now, I have an unlimited number of strikes.  If I think you have a bias by the way you've answered the question or something that occurred, then I can grant a motion by either party or on my own motion to strike you from the list on the basis that I think that in the way you're answering the questions, that you cannot be fair.  You cannot be impartial. Then these three lists are given to the Clerk.  The Clerk reads off the first twelve names that were not struck by anybody.  So, you're not picked, you're what's left over.  That's a joke.  It's a serious joke because that's how it works.  That's going

> to make you feel a little better about yourself. You just – maybe you didn't get
> reached. That's why we have so many people here. When you start off with 12
> people, now all of a sudden, you're up to 32, you may be at 40 or 50, depending on
> the nature of the charge of the case. In a very involved case of aggravated sexual
> assault of a child, we usually lose 20 percent of our panel who cannot sit and be fair.
> So, cases involving DWI's, cases involving intoxication manslaughter, we have a
> lot of people who say, look, I was involved, I lost a loved one. I can't do this. So,
> that's why we have so many of you. Now, if you want to be on this jury, sit in the
> front two rows and don't say anything. I guarantee you, you'll be on this jury.

S.F. Vol. II, at 16-17. The trial court then, in later remarks, impressed upon the panel the need to

express their opinions:

> . . . . Is there anybody here, and please, there are no wrong answers, guys. You're not
> going to be punished, you're not going to be ridiculed. I need to know the truth. So,
> if you really have an opinion and you're afraid to raise your hand, you're doing
> yourself and the defendant and the State a disservice.

S.F. Vol. II, at 26.

Mujica has made no showing that the trial court's comments to the jury, in their entire

context, had any effect on any individual person who was selected to serve, or on the jury that was

selected as a whole. As such, there is nothing to support Mujica's claim that his right to a fair and

impartial jury was infringed, and the rejection of this claim by the Texas courts is not contrary to or

an unreasonable application of clearly established Federal law. Under § 2254(d), no relief is

available on this claim.

**D.   Claim 12: that the trial court abused its discretion in allowing the
       "hearsay testimony of Mr. Greg Raider"**

In claim 12, Mujica complains about the admission of hearsay testimony from Greg Raider

that he saw Mujica throw drugs from the car in which he was fleeing from police. According to

Mujica, because Raider did not testify at trial and because his out-of-court statements were admitted

at trial through the testimony of Mark Terry, he was convicted based on hearsay and his right to

confront and cross-examine Greg Raider was infringed.

The record shows that the prosecutor questioned Mark Terry as follows about the surveillance and pursuit of Mujica.  During that questioning, Terry testified that he observed Mujica throw what appeared to be crystal methamphetamine out of the car window.  He also testified that Officer Raider radioed that Mujica was "throwing dope out of the car," and that he was later told by Raider that he also saw Mujica throw a bag out the window.  The prosecutor's questions and Agent Terry's answers are as follows:

Q:     Okay.  What was the next item of interest that drew your attention in pursuit of the defendant on this day?

A:     As I stated, now we're heading northbound on Highway 75.  Mr. Mujica is in front, the Task Force Officer Raider is directly behind him in a pickup truck, then I'm behind Task Force Officer Raider in my vehicle.  I moved my vehicle over to the left of those so I could see Mr. Mujica because my – because Greg Raider drives a pickup truck.  As we travel approximately a quarter of a mile, half a mile down the road, just past Shepherd Hill there on the map, as Task Force Officer Raider states on his radio, "he's throwing out the dope" --

Defendant's Counsel: Objection, Your Honor.

The Court: And your objection is?

Defendant's Counsel: Hearsay.

The Court: Overruled.

A:     At the moment, at the moment that Task Officer Raider relays on the radio that he's throwing out dope, I observe what I believe to be crystal methamphetamine coming out of the driver's window of Mr. Mujica's car at that moment.

Q:     Let me interrupt you.
       When you say that you saw this coming out of the driver's window of the car, what exactly did you see?

A:     It looks like shards of glass, like a broken chandelier, pieces of that coming

out which you could – which you could hold in the palm of your hand, just come out as a spray out of the window.

* * *

Q:    So, as you and Agent Jones collected that there in that bag, what did you all do next?

A:    We drove north on 75 to the arrest location.

Q:    At the time the defendant was throwing this stuff out the window, was it light outside?

A:    Yes, ma'am, it was.

Q:    Did you have any trouble seeing or collecting these bits on the middle of the road there?

A:    No, ma'am, I did not.

* * *

Q:    Okay.  What was the next action you took?

A:    I also heard on the police radio that the defendant –

Defendant's counsel: Objection, hearsay, Your Honor.

The Court: Overruled.

A:    That Mr. Mujica had thrown a bag out of the window.

Q:    When did you hear that dispatch?  At what point did you learn that information?

A:    While I was waiting for the trooper to pass by, so I wouldn't get hit.

* * *

Q:    And so, what did you do with reference to that information?

A:    Well, I showed Officer Raider what we had recovered, what I had recovered which I had seen the defendant throw out.

Q:    Now, when you got to the scene, what did you do with that bag of

24

                   methamphetamine you had recovered from the middle of the road?

A:      Special Agent Nate Jones maintained custody of that when I put it in the bag. He's the one that maintained custody.

Q:      So, after you showed this to Raider, then what did you do?

A:      He said, well, he also threw out a bag, a bag came out of the window, which I did not see. But I heard him broadcast it on the radio, so myself and Special Agent Nate Jones went back to the location to look for the bag.

* * *

Q:      Okay. And where did you locate that bag on the side of the road there?
A:      It was approximately 50 to a hundred yards north from my skidmarks.

S.F. Vol. IV, at 61-62, 71-73.

The Texas court's rejection of Mujica's claim that the trial court abused its discretion in allowing the hearsay testimony of Officer Raider is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented. In the context of a state criminal trial, state law hearsay rules apply. *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997) ("What is or is not hearsay in a state court trial is governed by state law"). Whether the state trial court in this case applied those state law hearsay rules correctly does not, in and of itself, implicate any Federal law, much less clearly established Federal law as determined by the Supreme Court.

In addition, under Texas law, the statements of Officer Raider could have been admissible as either non-hearsay, having been offered to establish background, investigatory or context information, *see Kimball v. State*, 24 S.W.3d 555, 564 (Tex. App.–Waco 2000, no pet.) (background or context); *Mendoza v. State*, 69 S.W.3d 628 633 (Tex. App.–Corpus Christi 2002, pet. ref'd) (testimony from officer as to what he heard on the police radio found not to be hearsay where it was

25

offered to show why officer arrested the defendant); *Williams v. State*, 1999 WL 33743877 (Tex. App.–Eastland 1999) (out-of-court statement that explained the actions of a police officer was not hearsay); *see also United States v. Carrillo*, 20 F.3d 617, 619 (5th Cir.); ("[o]ut-of-court statements providing background information to explain actions of investigators are not hearsay"), *cert. denied*, 513 U.S. 901 (1994), or as falling within an exception to the hearsay rule.  TEX. R. EVID. 803(1) (present sense impression); 803(2) (excited utterance).

Because Mujica's complaints about the admission of Officer Raider's out-of-court statements are based on state law, and because no federal constitutional claim was preserved for review, *see supra* p. 10-14[6],  the rejection of this claim by the Texas courts is not contrary to or an unreasonable application of clearly established Federal law.  Therefore, no relief is available on this claim under § 2254(d).

E.   **Claim 16: that the jury was unconstitutionally empaneled**

In claim 16, Mujica contends that the jury was unconstitutionally empaneled and that a biased juror (Ms. Headley) was selected.  Mujica premises this claim on the same statements made by the trial court at issue in claim 10, above.  For the same reasons set forth above, as well as the fact that Mujica fails to state or show how Ms. Headley was biased, no relief is available on this claim under § 2254(d).

---

[6] To the extent Mujica claims that the admission of Officer Raider's out of court statements violated his Sixth Amendment Confrontation rights, the record clearly shows that no such objection was made to the statement, and that the Texas Court of Criminal Appeals found Mujica's Confrontation Clause claim(s) to be procedurally barred.  As set forth above, Mujica's Confrontation Clause claim(s) is also procedurally barred from review herein. *See also e.g., Parr v. Quarterman*, 472 F.3d 245, 253 (5th Cir. 2006) (finding procedurally barred habeas petitioner's Confrontation Clause claim where no objection was made at trial on Confrontation Clause grounds and the Texas Court of Appeals concluded that the petitioner had not preserved the claim for review).

**F.**   **Claim 19**: that the trial court erred in admitting Mujica's post-arrest statement which was made without having been advised of his *Miranda* warnings

In claim 19, Mujica again complains about the admission of his post-arrest statements that were made without the benefit of his *Miranda* warnings.  For the same reasons set forth above, and the conclusion that Mujica's inculpatory statements were volunteered and spontaneous, and not subject to the protections of *Miranda*, the Texas court's rejection of this claim is not contrary to or an unreasonable application of *Miranda* and its progeny, nor is it based on an unreasonable determination of the facts in light of the evidence in the record.  No relief is available on this claim under § 2254(d).

**G.**   **Claim 25**: that the trial court erred in "[a]llowing the jury to separate without instruction"

In claim 25, Mujica contends the trial court "erred in permitting the jurors to separate after the charge has [sic] been raise to the jury at the punishment stage of the trial." Memorandum in Support (Document No. 2) at 104.  The Texas Court of Criminal Appeals rejected this claim in connection with Mujica's state application for writ of habeas corpus, when it determined that Mujica had presented "no evidence in support of his claim that the trial court improperly allowed the jury to separate without instruction."  *Ex parte Mujica*, WR-68,547-01 at 491.   Because there is no evidence in the record to support this claim, the rejection of this claim by the Texas Court of Criminal Appeals is not based on an unreasonable determination of the facts in light of the evidence in the record.  As such, no relief is available on this claim under § 2254(d).

**H.**   **Claim 26**: that the jury engaged in misconduct

In claim 26, Mujica alleges that the jury engaged in misconduct by discussing "what type of formula to use in order to sentence [Mujica] and did so with an outside contact."  Memorandum in